UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RONALD HUNTER,              )
                           )
        Plaintiff,          )
                           )
vs.                         )    CIVIL ACTION No. CV-96-S-0324-S
                           )
ALABAMA COPPER AND BRONZE,  )
                           )
        Defendant.          )
_____)

**ENTERED**

APR 17 1997.

MEMORANDUM OPINION

        This action is before the court on: defendant's motion for
summary judgment; plaintiff's motion to strike portions of the
affidavit of Pam Bryant; and, plaintiff's motion to supplement his
opposition to summary judgment. Plaintiff, an African-American
male, alleges that defendant refused to hire him because of his
race, in violation of Title VII of the Civil Rights Act of 1964, as
amended by the Civil Rights Act of 1991 (42 U.S.C. §§ 2000e et
seq.), and, 42 U.S.C. § 1981.

I. STATEMENT OF THE CASE

        On May 5, 1996, plaintiff applied for a "grinder" position
with defendant, Alabama Copper and Bronze ("Alabama Copper").
Dennis Webb, Alabama Copper's plant supervisor, interviewed him.
Webb was satisfied with plaintiff's qualifications. Therefore,
only one step remained to complete the application process:
plaintiff was required to submit to a drug screen and physical
examination. Plaintiff claims Webb represented he would be hired
for the grinder position if he passed the drug test. (Plaintiff
Deposition, at 96.)

## A.    Plaintiff is Required to Submit to a Drug Screen

Since 1993, Alabama Copper has required that all applicants for employment submit to a physical examination and drug screen analysis as part of the application process. (Webb Deposition, at 68.)  In fact, Alabama Copper has never hired an applicant who failed the drug screen analysis.   The applicants are tested in Dr. Robert Whitten's office at Carraway Industrial Clinic.

After plaintiff's interview by Webb on May 5, 1996, Webb instructed him to submit to the required drug testing and physical that same day.   Donna Adams, Alabama Copper's office manager, prepared the necessary paperwork to refer plaintiff to Dr. Whitten's office for the drug test.

Later that same day, plaintiff presented to Dr. Whitten's office. He was instructed to provide a urine sample for analysis.[1] Plaintiff stated the following about his May 5, 1995 visit to Dr. Whiten's office:

> I appeared at the clinic and proceeded with the drug
> screen.  I was asked to give a urine specimen.  I tried
> to comply with the request.  The nurse informed me that
> I had not produced enough urine and <u>the temperature of
> [the] sample was inadequate</u>.  The nurse informed me that
> the clinic was closing for the weekend and I would have
> to return on [M]onday. ...  At no time did the nurse ever
> ask or accuse me of trying to manipulate the test.

(Plaintiff's Exhibit 1: Plaintiff's Affidavit, at ¶¶ 5-6 (emphasis added).)

---

[1] The May 5, 1995 testing was not the first occasion plaintiff had participated in a drug screen analysis. Accordingly, he was familiar with testing procedures. (Plaintiff's Deposition, at 67-74.)

The vial plaintiff tendered was rejected by Dr. Whitten's medical technician, Pam B. Bryant, for the following reasons:

4. On May 5, 1995, Ronald Hunter handed me a urine sample. This urine sample was nowhere near the correct temperature. It was below 90.5 degrees.

5. Standard drug testing procedures require that a urine sample be within a certain temperature range. It had to be at least 90.5 degrees.

6. Pursuant to standard drug testing procedures, I refused to accept the urine sample because of inadequate temperature.

7. There are only three (3) reasons why a urine sample would be at an inadequate temperature. The three reasons are as follows:

   (a) The urine sample has been tampered with.

   (b) The urine sample is not the person being tested specimen or sample [sic].

   (c) The urine sample has been diluted.

8. When we receive a urine sample that is inadequate temperature, we know it was either brought onto our premises and not produced on site, or it was tampered with in some way while the person being tested was on our premises.

9. Standard drug testing procedures require that the urine sample be produced on the premises.

10. If we receive a urine sample that is inadequate temperature from a person undergoing a pre-employment drug screening, we immediately inform the employer.

(Defendant's Exhibit 9: Bryant Affidavit, at 2 (emphasis in original).)[2]

---

[2] Plaintiff filed a motion to strike paragraphs 5, 6, and 7 from Bryant's affidavit, claiming she is not qualified to give such expert testimony. Expert testimony is presented when "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Bryant's testimony is not expert testimony because its relevance does not go to whether the correct procedures

3

Technician Pam Bryant immediately telephoned Alabama Copper and notified office manager Donna Adams of the suspicious circumstances surrounding plaintiff's urine sample. Adams recalls that Bryant told her "Ronald Hunter came into their office on May 5, 1995, and produced a cup of cold urine (almost frosty)." (Defendant's Exhibit 13: Adams Affidavit, ¶ 4.) Adams relayed the information to Dennis Webb.

Plaintiff submitted to, and passed, a second drug test the following Monday, May 8, 1995, more than 48 hours after Alabama Copper's initial request that he take the drug test. (Plaintiff's Exhibit 3.) Between May 8, 1995 and May 12, 1995, plaintiff persistently called office manager Adams, inquiring about the result of his drug test, among other things. (Defendant's Exhibit 13: Adams Affidavit, at 2.)

C.  Webb Decides not to Hire Plaintiff

Dennis Webb described his perception of the circumstances surrounding plaintiff's drug testing as follows:

He went down there to take it and I understood that he carried his own urine or whatever from somewhere else and they would not let him take the drug test under that condition.

---

were used or whether she knows what procedures are correct. Bryant's testimony is lay testimony because she is only conveying what she personally observed and what she relayed to defendant. Bryant's testimony relates solely to what she observed in relation to plaintiff's drug screen, and what information she relayed to defendant about the drug screen. "What [she] observed and what she informed the [defendant's] management are historical facts that are the grist of lay witness testimony."  Hartzell Manufacturing, Inc. v. American Chemical Technologies, 899 F. Supp. 405, 409 (D. Minn. 1995).  Therefore, plaintiff's motion to strike is due to be denied.

4

(*Id.*, 29.) Webb chose not to hire plaintiff for the grinder position, because "he didn't do the drug test procedure right." (Webb Deposition, at 40.) He does not recall informing plaintiff that he would not be hired. (Webb Deposition, at 36.) Plaintiff, however, claims that sometime before May 16, 1995,

> I finally talked to Mr. Webb on the phone about the job. Mr. Webb told me that he was sorry that he had already hired somebody else. Mr. Webb indicated that the person they had hired was working out.

(Plaintiff's Affidavit, ¶ 9.) Plaintiff also claims that Webb never mentioned that he was not hired because of the suspicious circumstances surrounding his first drug test.[3]

On May 22, 1995, Marvin Cole, a black male, interviewed for the same grinder position that had been denied plaintiff. Cole submitted to and passed a drug test that same day. (Plaintiff's Exhibit 12.) Webb subsequently hired Cole. Webb was not aware at

---

[3] Plaintiff argues that discriminatory motive is revealed by the fact that Webb did not explain that plaintiff was not hired because of the drug testing incident, and because Webb allegedly told him the position was filled before Cole was actually hired. Those arguments are not persuasive. As defendant notes:

> When employers decide not to hire a person, they often give the applicant a standard, non-detailed reason for their non-selection [*i.e.*, "we've already filled the position and he's working out"]. Employers are rarely candid or cruel with applicants. ... [They do not tell the applicant exactly why he or she was not hired]. It goes against good business judgment and common sense to do such a thing.

> The fact that Alabama Copper exhibited some decency by not telling Hunter that Dr. Whitten's office suspected him of tampering with his urine in an attempt to circumvent drug testing procedures, and that this often occurs with a drug user, has nothing to do with discrimination or unlawful employment practices. It only demonstrates that Alabama Copper handled the situation with tact, common courtesy, and good sense.

(Defendant's Reply Brief, at 12.)

5

the time he hired Cole that plaintiff had filed a charge of discrimination with the EEOC on May 16, 1995.  (Webb Deposition, at 70.)

## II.  MOTION FOR SUMMARY JUDGMENT

### A.  Standard of Review

Rule 56(c), of the Federal Rules of Civil Procedure provides that summary judgment not only is proper, but "<u>shall be rendered forthwith</u> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. ..."  (Emphasis supplied.)

The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The moving party discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-moving party's case.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995)(per curiam).  Rule 56 permits the movant to discharge this burden <u>with</u> or <u>without</u> supporting affidavits.  *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2553.  When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial.  *Jeffery*, 64 F.3d at 593.

6

In deciding whether the moving party has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not, however, unqualified. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine issue of material fact.

Thus, if the reasonable fact finder evaluating the evidence *could* draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *Augusta Iron & Steel Works v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

7

**B.   Title VII and § 1981 Analysis**

To prevail on a disparate treatment claim, plaintiff must prove the employer intended to discriminate against him.  *See, e.g., Armstrong v. Flowers Hospital, Inc.*, 33 F.3d 1308, 1313 (11th Cir. 1994).   The evaluation of plaintiff's evidence of the employer's intent differs, depending upon whether the plaintiff's proof is direct or circumstantial in nature.

"When there is direct evidence that discrimination was a motivating factor in the challenged employment decision, the appropriate analysis is different from that employed in a case where only circumstantial evidence is available."  *Trotter v. Board of Trustees of the University of Alabama*, 91 F.3d 1449, 1453 (11th Cir. 1996)(citing *Bell v. Birmingham Linen Service*, 715 F.2d 1552, 1556 (11th Cir. 1983), *cert. denied*, 467 U.S. 1204, 104 S.Ct. 2385 (1984); *Haynes v. W.C. Caye and Co., Inc.*, 52 F.3d 928, 931 (11th Cir. 1995)).

**1.   Direct Evidence of Discrimination**

When a plaintiff establishes by direct evidence that a contested employment decision was motivated by a discriminatory animus, the employer "may avoid a finding of liability only by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender [race, religion, color, national origin, age, or disability] into account."  *Price Waterhouse v. Hopkins*, 490 U.S. 228, 258, 109 S.Ct. 1775, 1795 (1989)(emphasis supplied).   In other words, "defendant must prove that there was a separate, racially neutral

8

[*i.e.*, non-discriminatory] reason for its" contested employment decision. *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d 920, 925 (11th Cir. 1990) (emphasis supplied).

In the present case, plaintiff has failed to present any direct evidence of discrimination. Therefore, evaluation of his claims must proceed in the framework for cases based upon circumstantial evidence.

### 2.    Circumstantial Evidence of Discrimination

Normally, a plaintiff does not possess direct evidence of the employer's motive. "There will seldom be 'eyewitness' testimony as to the employer's mental processes." *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482 (1983). Nevertheless, discriminatory intent can sometimes be inferred from circumstantial evidence. In such cases, a shifting burden framework of analysis is applied to evaluate the strength of the plaintiff's proof, and his ability to withstand a defendant's motion for summary judgment, or for judgment as a matter of law.

In three decisions rendered over two decades, the Supreme Court "developed a formula for shifting evidentiary burdens between plaintiff and defendant which permits the establishment of intentional discrimination without direct evidence of unlawful motivation." A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 39-40 (3d ed. 1996). The order and allocation of burdens of proof, persuasion, and production for Title VII disparate treatment claims were first defined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct 1817 (1973), then elaborated in *Texas Department*

9

of *Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089 (1981), and finally elucidated in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742 (1993).

The analytical framework developed by that trilogy has three steps: the ultimate goal of which is that of "progressively ... sharpen[ing] the inquiry into the elusive factual question of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746 (quoting *Burdine*, 450 U.S. at 255 n.8, 101 S.Ct. at 1094 n.8).

The framework "is to be applied in cases where circumstantial evidence is the only proof of discrimination.  When a plaintiff proves a case of discrimination by direct evidence, application of *McDonnell Douglas* is inappropriate." *E.E.O.C. v. Alton Packaging Corp.*, 901 F.2d at 923 (citing *Lee v. Russell County Board of Education*, 684 F.2d 769, 774 (11th Cir. 1982)).

### a.   First Step of Analysis

A plaintiff must first establish, by a preponderance of the evidence, a "prima facie case" of discrimination.   *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 252-53, 101 S.Ct. at 1093; *St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2746-47.

This may be done by showing that: (1) he belongs to a protected class; (2) he applied for, and was qualified to fill, a position for which defendant was taking applications; (3) despite his qualifications, he was rejected; and (4) after rejection, the position remained open and defendant continued to seek applications

10

from persons of his qualifications. *See, e.g., McDonnell Douglas*,
411 U.S. at 802, 93 S.Ct. at 1824 (failure to hire based on racial
discrimination); *Turnes v. AmSouth Bank, NA,* 36 F.3d 1057, 1060 n.7
(11th Cir. 1994) (same) (*citing Jones v. Firestone Tire and Rubber
Co., Inc.,* 977 F.2d 527, 536 (11th Cir. 1992), *cert. denied,* 508
U.S. 961, 113 S.Ct. 2932 (1993) (same)).

"The burden of establishing a prima facie case of disparate
treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. at
1094. Nevertheless, establishment of a prima facie case "serves an
important function in the litigation: it eliminates the most common
nondiscriminatory reasons for" the challenged employment decision,
*id.*, 450 U.S. at 253-54, 101 S.Ct. at 1094, and, "in effect creates
a <u>presumption</u> that the employer unlawfully discriminated against
the employee." *Id.*, 450 U.S. at 254, 101 S.Ct. 1094 (emphasis
supplied) (quoted with approval in *St. Mary's Honor Center*, 509 U.S.
at 506, 113 S.Ct. at 2747). Thus,

> [i]f the trier of fact believes the plaintiff's evidence,
> <u>and if the employer is silent in the face of the
> presumption</u>, the court must enter judgment for the
> plaintiff because no issue of fact remains in the case.

*Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094 (emphasis supplied).

However, the establishment of a prima facie case is not an
ultimate finding of discriminatory intent; rather, it simply raises
a <u>rebuttable</u> presumption of discrimination, "because we presume
these acts, if otherwise unexplained, are more likely than not
based on the consideration of impermissible factors." *Furnco*

11

*Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50 (1978).[4]

### b.   Second Step of Analysis

Therefore, when plaintiff makes out a prima facie case establishing a presumption of intentional discrimination, "[t]he burden ... shift[s] to the employer to articulate [but <u>not prove</u>[5]] some legitimate, nondiscriminatory reason" for the contested employment decision. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Burdine*, 450 U.S. at 253, 101 S.Ct. at 1093.

> The burden which shifts to the defendant is only that of rebutting the presumption of discrimination, thereby raising an issue of fact. Defendant can meet this burden by producing "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the adverse action." <u>Defendant is not required at this juncture to prove absence of discriminatory motive, or even to persuade the court that the reasons proffered actually motivated its decision.</u>   ...

---

[4] *See Burdine*, 450 U.S. at 254 n.7, 101 S.Ct. at 1094 n.7:

> The phrase "prima facie case" not only may denote the establishment of a legally mandatory, rebuttable presumption, but also may be used by courts to describe the plaintiff's burden of producing enough evidence to permit the trier of fact to infer the fact at issue. 9 J. Wigmore, *Evidence* § 2494 (3d ed. 1940). *McDonnell Douglas* should have made it apparent that in the Title VII context we use "prima facie case" in the former sense.

*See also St. Mary's Honor Center*, 509 U.S. at 506, 113 S.Ct. at 2747:

> To establish a "presumption" is to say that a finding of the predicate fact (here, the prima facie case) produces "a required conclusion in the absence of explanation" (here, the finding of unlawful discrimination). 1 D. Louisell & C. Mueller, *Federal Evidence* § 67, p. 536 (1977).

[5] *See, e.g., Burdine*, 450 U.S. at 254, 101 S. Ct. at 1094 ("The defendant need not persuade the court that it was actually motivated by the proffered reasons"); *see also*, Busby v. City of Orlando, 931 F.2d 764, 77 n.12 (11th Cir. 1991)("this 'burden of proof' is to be understood as a burden of production, not persuasion" (citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642 (1989)).

A.C. Modjeska, *Employment Discrimination Law* § 1:09, at 41 (3d ed. 1996)(footnotes omitted)(emphasis supplied). Justice Scalia, speaking for the Court in *St. Mary's,* described this shift in the burden of going forward with evidence in the following manner:

> Thus, the *McDonnell Douglas* presumption places upon the defendant the burden of producing an explanation to rebut the prima facie case — *i.e.,* the burden of "producing evidence" that the adverse employment actions were taken "for a legitimate, nondiscriminatory reason." ... "[T]he defendant must clearly set forth, through the introduction of admissible evidence," reasons for its actions which, if believed by the trier of fact, would support a finding that the unlawful discrimination was not the cause of the employment action. ... It is important to note, however, that although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff," .... In this regard it operates like all presumptions as described in Rule 301 of the Federal Rules of Evidence:
>
> > "In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

*St. Mary's Honor Center,* 509 U.S. at 506-07, 113 S.Ct. at 2747 (citations to *Burdine* omitted).

If a defendant figuratively sits on its hands, and offers no "admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus," *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096, then "the court must award judgment to the plaintiff as a

13

matter of law ....* *St. Mary's Honor Center*, 509 U.S. at 509, 113 S.Ct. at 2748.

On the other hand, "[i]f the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted," *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1094-95, and "drops from the case." *Id.*, 450 U.S. at 255 n.10, 101 S.Ct. at 1095 n.10; accord, *St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48. "A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from the plaintiff's initial evidence." *Burdine*, 450 U.S. at 256 n.10, 101 S.Ct. at 1095 n.10.

> The plaintiff then has "the full and fair opportunity to demonstrate," ... "that the proffered reason was not the true reason for the employment decision," ... and that race was. He retains that "ultimate burden of persuading the [trier of fact] that [he] has been the victim of intentional discrimination." ...

*St. Mary's Honor Center*, 509 U.S. at 507-08, 113 S.Ct. at 2747-48 (citations to *Burdine* omitted).

### c. Third Step of Analysis

"The defendant's 'production' (whatever its persuasive effect) having been made," *id.*, 509 U.S. at 511, 113 S.Ct. at 2749, "the factual inquiry proceeds to a new level of specificity." *Burdine*, 450 U.S. at 255, 101 S.Ct. at 1095.

> [T]he "new level of specificity" ... refer[s] to the fact that the inquiry now turns from the few generalized factors that establish a prima facie case to the specific proofs and rebuttals of discriminatory motivation the parties have introduced.

*St. Mary's Honor Center*, 509 U.S. at 516, 113 S.Ct. at 2752.

14

Thus, at this third level of analysis, plaintiff has the burden of proving that the defendant's explanation is "a pretext for discrimination." To do that, plaintiff must show both that the defendant's stated reasons for the contested employment decision are false, or not worthy of belief, and that it is more likely true than not true that discrimination was the true reason.

> [A] reason cannot be proved to be a "pretext for discrimination" unless it is shown both that the reason was false, and that discrimination was the real reason.

*St. Mary's Honor Center*, 509 U.S. at 515, 113 S.Ct. at 2752 (emphasis supplied). In other words, simply showing the employer's stated reasons are false, or unworthy of belief, does not — standing alone — compel a finding of discrimination; rather, plaintiff still must prove that discrimination was a motivating factor in the decision.

> It is not enough ... to *disbelieve* the employer; the factfinder must *believe* the plaintiff's explanation of intentional discrimination.

*Id.*, 509 U.S. at 519, 113 S.Ct. at 2754 (emphasis in original).

### d.   Motions for Summary Judgment

District courts within the Eleventh Circuit are instructed to be cautious when applying the *McDonnell Douglas* framework to motions for summary judgment. This Circuit has emphasized that

> *St. Mary's* was an appeal of a bench trial in which the district judge entered judgment for the defendant notwithstanding its [sic] finding that the stated reasons for the adverse employment decision were false.

*Howard v. BP Oil Co., Inc.*, 32 F.3d 520, 525 (11th Cir. 1994); *see also Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 441 (11th Cir. 1996):

15

Because [*St. Mary's Honor Center*] was a case that had
been fully tried before a judge sitting as the trier of
fact, [it] said nothing about either Rule 50 (judgment as
a matter of law in action tried by a jury) or Rule 56
(summary judgment) in employment discrimination cases.
[Emphasis supplied.]

Accordingly, the Eleventh Circuit reads *St. Mary's* holding in a

different light when considering summary judgments:

*St. Mary's* held that to prevail at trial, a plaintiff
must do more that merely prove the articulated reasons
false.   The plaintiff must also prove that the real
reason for the employer's decision was intentional racial
discrimination.   *Id.* at __, 113 S.Ct. at 2752.   However,
to withstand summary judgment, a plaintiff need only
demonstrate that a genuine question exists at to whether
the reason for the decision was intentional discrimi-
nation.

. . . .

    *St. Mary's* holds that *proof* that a defendant's
articulated reasons are false is not *proof* of intentional
discrimination; it is merely *evidence* of intentional dis-
crimination.   However, *evidence* of intentional discrimi-
nation is all a plaintiff needs to defeat a motion for
summary judgment.   The evidence must be sufficient to
create a genuine factual issue with respect to the
truthfulness of the defendant's proffered explanation.

. . . .

Under *St. Mary's* a plaintiff withstands summary adjudi-
cation by producing sufficient evidence to allow a
reasonable finder of fact to conclude that the
defendant's articulated reasons for its decision are not
believable.   Such evidence may consist of a defendant's
inconsistent statements.

    We emphasize that *St. Mary's* does not in any way
alter the summary judgment burdens articulated in
*Celotex*.   In *Celotex* the Court held that when "the non-
moving party will bear the burden of proof at trial on a
dispositive issue," as [plaintiff herein] will with
respect to the issue of intentional discrimination, "Rule
56(e) ... requires the non-moving party to go beyond the
pleadings and ... designate specific facts showing there
is a genuine issue for trial."   477 U.S. at 324, 106
S.Ct. at 2553.   *St. Mary's* merely indicates that evidence
from which a jury could find that the articulated reasons

16

are false is enough to create a genuine issue for trial.
__ U.S. __, 113 S.Ct. at 2749.

*Howard v. BP Oil*, 32 F.3d at 525-26 (*italics* in original)(emphasis added);[6] *see also Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986)(plaintiff opposing summary judgment must offer "specific and significantly probative evidence" that employer's stated reasons are pretextual); *Woroski v. Nashua Corp.*, 31 F.3d 105, 110 (2d Cir. 1995).

**D. Application of the McDonnell Douglas Framework**

   **1. Plaintiff's Prima Facie Case**

Alabama Copper asserts that plaintiff cannot establish the fourth prong of his prima facie case: *i.e.*, that after his rejection, the position remained open and defendant continued to seek applications from persons of his qualifications, or that a person was hired from outside the protected class. Alabama Copper argues that, "because [it] hired a black male to fill the grinder's position, plaintiff's racial discrimination claims must fail as a matter of law." (Alabama Copper's Brief, at 7.) The same proposition has been rejected in this circuit. The district court opinion reviewed by the Eleventh Circuit in *Howard v. Roadway Express, Inc.*, 726 F.2d 1529 (11th Cir. 1984), adopted such an argument when it stated, without citing authority, "[i]t has been

---

[6] A recent Eleventh Circuit panel has noted that *Walker v. NationsBank of Florida*, 53 F.3d 1548 (11th Cir. 1995) and *Isenbergh v. Knight-Ridder Newspaper Sales, Inc.*, 97 F.3d 436, 441 (11th Cir. 1996) are inconsistent with the reasoning in *Howard*. *See* *Combs v. Plantation Patterns*, 106 F.3d 1519 (11th Cir. 1997). The panel concluded, however, that *Howard* and similar Eleventh Circuit cases "and not *Walker* or *Isenbergh*, state what has been and will be the law of this circuit unless and until the *en banc* Court, the Supreme Court, or Congress changes it." *Combs*, 106 F.3d at 1534.

17

firmly established by precedent that there can be no racial discrimination against a black person who is not selected for a job when the person who is selected for the job is black." *Id.* at 1533. The Eleventh Circuit promptly reversed, saying "the district court misstated the applicable law." *Id.* In doing so, the *Howard* court noted that the case of *Jefferies v. Harris County Community Action Association*, 615 F.2d 1025 (5th Cir. 1980), might appear to support the *per se* rule adopted by the district court, but added that the facts in *Jefferies* were distinguishable from *Howard*:

> In *Jefferies*, the defendant was faced with a choice between two black applicants and chose one over the other; it was therefore implausible, if not logically impossible, for the decision to have been racially discriminatory. In this case, by contrast, the two applicants apparently did not apply at the same time, so there was no analogous choice between blacks. Since Roadway Express did not choose the later black applicant over Howard, it is logically possible and plausible that its rejection of Howard's application was racially discriminatory.

*Howard*, 726 F.2d at 1534 n.4.

Marvin Cole, the black male hired for the grinder position also sought by plaintiff herein, did not apply for the position until after plaintiff's application had been rejected.  Thus, because Alabama Copper did not choose Cole over Howard, "it is logically possible and plausible that its rejection of [his] application was racially discriminatory." *Id.*

Plaintiff has proven that: he belongs to a protected class (African-American); he applied for, and was qualified to fill, a position for which Alabama Copper was taking applications; despite his qualifications, he was rejected; and after his rejection, the

18

position remained open and Alabama Copper continued to seek applications from persons of his qualifications. Thus, this court concludes plaintiff has established a prima facie case.

### 2. Alabama Copper's Legitimate Nondiscriminatory Reason

Alabama Copper presented the following reason for its decision: "Hunter was not hired by Alabama Copper based on the information provided to the company by Dr. Whitten's office regarding his first visit to their office for the drug screening." (Alabama Copper's Brief, at 9.) By meeting its burden of producing a legitimate reason for its decision, Alabama Copper successfully eliminated the presumption of discrimination that accompanied plaintiff's prima facie case.

### 3. Plaintiff's Evidence of Pretext

Plaintiff has argued that there are disputed facts as to what actually occurred at the clinic on May 5, 1995. Alabama Copper correctly points out, however, that

> exactly what happened on [plaintiff's] first visit to Dr. Whitten's office on May 5, 1995 is wholly irrelevant to the disposition of this case. What is relevant ... is exactly what was conveyed by Dr. Whitten's office to Alabama Copper and was subsequently relied upon by Alabama Copper in its decision not to hire [plaintiff]....

(Alabama Copper's Brief, at 10-11.)

In examining the motivation behind a disputed employment decision, "[i]t is the perception of the decision maker which is relevant." *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980); *see also Karazanos v. Navistar International Transportation Corp.*, 948 F.2d 332, 337-38 (7th Cir. 1991); *Branson v. Price River Coal Co.*,

19

853 F.2d 768, 772 (10th Cir. 1988). Dennis Webb, the plant supervisor, was Alabama Copper's decision maker.

Plaintiff admitted that he has no personal knowledge of what Dr. Whitten's office communicated to Alabama Copper on May 5, 1995. (Plaintiff's Deposition, at 97.) The undisputed evidence shows that Pam B. Bryant, a medical technician in Dr. Whitten's office, telephoned Alabama Copper on that day and informed office manager Donna Adams of the suspicious circumstances surrounding plaintiff's taking of the drug test (i.e., that the temperature of the sample was well below the acceptable range). Ms. Adams relayed that information to Dennis Webb.

Pam Bryant testified there are only three explanations for the temperature of plaintiff's sample: the urine sample was tampered with; the urine sample was not his; or the urine sample had been diluted. The issues of whether Bryant was qualified to make such a statement, or whether the medical evidence supports such a statement, are not relevant. The only relevance of such evidence to this action is that Bryant relayed that information to Alabama Copper, and Alabama Copper relied upon it.

After Dennis Webb was told of the circumstances surrounding plaintiff's drug test, Webb "assumed that [plaintiff] was trying to circumvent the drug screening procedures in fear of a positive drug test result." (Alabama Copper's Reply Brief, at 7.) Webb's perception of the circumstances was reasonable, in that he relied on information conveyed to Alabama Copper by a medical technician

20

who had more experience in drug testing protocols than any employee at Alabama Copper.

Plaintiff argues that he returned to the clinic the following Monday, passed the drug test, and that such a result entitled him to the grinder position. While Alabama Copper could have chosen to hire plaintiff after he took his second test, it was under no duty to do so.[7] Defendant's decision to reject plaintiff's application based solely on the suspicious circumstances surrounding his first test attempt might appear to be unjust or unfair, especially if there simply was a misunderstanding between plaintiff and clinic employees. Nonetheless, "[i]t is not enough for the plaintiff to show that a reason given for a job action is not just, or fair, or sensible. He must show that the explanation given is phony." *Pignato v. American Trans Air, Inc.*, 14 F.3d 342, 349 (7th Cir. 1994). Plaintiff has not done so.

Indeed, plaintiff has failed to offer any evidence that would demonstrate the existence of a genuine issue of fact as to the truth of Alabama Copper's proffered reason for not hiring him and, therefore, Alabama Copper is entitled to summary judgment. *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1529 (11th Cir. 1997)("plaintiff is entitled to survive summary judgment ... if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of the employer's

---

[7] Alabama Copper argues that many of the drugs for which the screening is used dissipate within 48 hours of consumption and, therefore, plaintiff's second test was unreliable and irrelevant because he had three additional days. (Alabama Copper's Brief, at 12.)

21

proffered reasons for its challenged action"). While Alabama Copper's decision might not have been the fairest one, it is not this court's place to "sit as a super-personnel department that reexamines an entity's business decisions." *Alphin v. Sears, Roebuck & Company*, 940 F.2d 1497, 1501 (11th Cir. 1991)(quoting *Dale v. Chicago Tribune Co.*, 797 F.2d 458, 464 (7th Cir. 1986), *cert. denied*, 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987)).

### III. CONCLUSION

For the foregoing reasons, Alabama Copper's motion for summary judgment is due to be granted. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this 17th day of April, 1997.

United States District Judge

22